UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANLEY BOSS,<br><br>      Plaintiff,<br><br>  v.<br><br>PILLSBURY WINTHROP SHAW PITTMAN,<br><br>      Defendant. | No. 25-cv-616 |

## MEMORANDUM OPINION

Plaintiff Stanley Boss, proceeding *pro se*, alleges that Defendant Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") initiated a United States Customs Immigration Services ("USCIS") citizenship inquiry into him to disadvantage him in future employment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Eighth Amendment. Am. Compl. at 1, ECF No. 30. The court granted Boss's motion to amend his complaint, ECF No. 24, and now Pillsbury moves to dismiss the Amended Complaint for insufficient service of process and lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(5), and for failure to state a claim under Rule 12(b)(6), Mot. to Dismiss, ECF No. 28. Boss moves for default judgment under Federal Rule of Civil Procedure 12(c). ECF No. 29. For the following reasons, the court will GRANT Defendant's Motion to Dismiss and DENY Plaintiff's Motion for Default Judgment.

    **I.**    **BACKGROUND**

Boss, a Black man, was employed by Pillsbury from approximately March 2018 to May 2019. Am. Compl. at 2; Mot. to Dismiss at 1. In June 2019, Boss reached an Equal

Employment Opportunity Commission ("EEOC") discrimination settlement with Pillsbury. Am. Compl. at 1. In 2022, he was hired by Bentall Green Oak, who asked for his W-2 from Pillsbury during his onboarding process. *Id.* ¶¶ 3, 21. Boss attributes this request to a 2022 USCIS citizenship status inquiry that he claims Pillsbury opened with Bentall Green Oak's help. *Id.* ¶ 6. In 2024, Boss applied for a position at Edward Jones Financial and was rejected after a multi-step interview and testing process. *Id.* ¶¶ 2, 15–19. He claims he was denied the position because of the USCIS inquiry, which "Pillsbury used . . . to retaliate and exempt [his] status to legally work in the United States." *Id.* at 2. He contends that Pillsbury's initiation of the citizenship inquiry constituted a cruel and unusual practice in violation of the Eighth Amendment as well as discriminatory treatment under Title VII. *Id.* ¶ 3. He seeks $394,305 in punitive and compensatory damages. *Id.* at 6–7.

II.     **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(5), the plaintiff bears the burden of proving that he has effectuated proper service by demonstrating that he complied with the relevant portions of Rule 4 "and any other applicable provision of law." *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987). A motion under Rule 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2022). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The court must assume all "well-pleaded factual allegations" are accurate, *id.* at 679, and "grant plaintiffs the benefit of all inferences that

can be derived from the facts alleged," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

"Although '[p]ro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings,' they still bear the burden of demonstrating that service was properly effected." *Anderson v. Gates*, 20 F. Supp. 3d 114, 121 (D.D.C. 2013) (quoting *Moore v. Agency for Int'l Dev.,* 994 F.2d 874, 876 (D.C. Cir.1993)). And while they are likewise held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Ashcroft*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555).

### III.     ANALYSIS

The court will first address the issue of personal jurisdiction over Pillsbury.  To determine the applicable procedures for service of process, the court looks to the law of "the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e), (h)(1)(A).  "In the District of Columbia, service of process may be effectuated by 'mail addressed to the person to be served and requiring a signed receipt.'  D.C. Code § 13–431; *see* D.C. SCR–Civil R. 4(c)(3), (h)(1).  If the defendant is a corporation or partnership, a copy of the summons and complaint must be delivered to an officer or agent authorized to receive service of process on the entity's behalf. Fed. R. Civ. P. 4(h)(1)(B); D.C. SCR–Civil R. 4(h)(1)." *Hardy v. Joseph I. Sussman, P.C.*, 953 F. Supp. 2d 102, 107 (D.D.C. 2013).  Because Boss served his Amended Complaint via certified mail, his proof of service must be accompanied by a signed receipt attached to an affidavit.  D.C. Super. Ct. R. Civ. P. 4(l)(1)(B).  If the return receipt "does not purport to be signed by the party named in the summons," the affidavit must include

"specific facts from which the court can determine that the person who signed the receipt meets the appropriate qualifications for receipt of process set out in Rule 4(e)-(j)." *Id.* 4(l)(1)(B)(iv).

Here, Boss's affidavit is not accompanied by a signed receipt, nor does it state that he served Pillsbury's registered agent or someone authorized to accept service. *See* ECF Nos. 25, 26. While Boss asserts that Pillsbury's counsel in this matter, Meaghan Murphy, accepted process, there is no evidence that Pillsbury intended to confer such authority on Murphy. *See Fenwick v. United States*, 691 F. Supp. 2d 108, 113 (D.D.C. 2010) (finding service was insufficient without evidence that employee who accepted process was specifically authorized to do so); Mot. to Dismiss at 11. Without such evidence, the court cannot conclude Boss made proper service upon Pillsbury. *See Hardy*, 953 F. Supp. 2d at 107.

But because Boss is proceeding *pro se*, the court will not penalize him for having assumed delivery to Pillsbury's counsel constituted proper service, especially when there are other bases on which to dismiss his complaint. *See id.* at 108; *Dominguez v. Dist. of Columbia*, 536 F.Supp.2d 18, 22 (D.D.C. 2008) ("If dismissing the claim without prejudice due to insufficient service would lead to the refiling of a meritless claim, . . . [this] Circuit has held that it is proper to consider other means of dismissing the [claim]."). Accordingly, although the court lacks personal jurisdiction over Pillsbury, it will nonetheless analyze and dismiss Boss's Title VII and Eighth Amendment claims under Rule 12(b)(6). *See Anderson*, 20 F.Supp.3d at 120; *Simpkins v. D.C. Gov't*, 108 F.3d 366, 370 (D.C. Cir. 1997).

Title VII prohibits "discrimination based on race, color, religion, sex, or national origin" in "[a]ll personnel actions affecting employees or applicants for employment . . . in executive agencies" of the United States. 42 U.S.C. § 2000e-16(a). A plaintiff may plead a Title VII discrimination claim by alleging "that (1) he is a member of a protected class, (2) he suffered an

adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that his employer took the action because of his membership in the protected class)." *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (citation and internal quotation marks omitted). To state a retaliation claim under Title VII, "a plaintiff must plausibly allege that (1) she 'engaged in statutorily protected activity,' (2) she 'suffered a materially adverse action by [her] employer,' and (3) the two are causally connected." *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 539 (D.C. Cir. 2024) (quoting *Howard R.L. Cook & Tommy Shaw Found. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013)); *see* 42 U.S.C. § 2000e–3(a).

Boss alleges that Pillsbury engaged in "unlawful employment practices based on race and national origin to discriminate against [him]." Am. Compl. at 2. But merely invoking race and national origin as part of the claim's narrative is insufficient; to plausibly plead the causation element, Boss must allege specific, non-conclusory facts giving rise to a reasonable inference that Pillsbury initiated the USCIS inquiry, that it did so because of his race or national origin, and that his rejection from Edward Jones was connected to that inquiry.

Boss fails on all accounts. He pleads no facts from which the court can reasonably infer that Pillsbury played a role in initiating the 2022 citizenship inquiry, several years after Boss's employment at the firm. Instead, he asks the court to assume Pillsbury's involvement (which Pillsbury denies) from the mere fact that Bentall Green Oak requested Boss's Pillsbury W-2 as part of routine onboarding procedures. The connection between the two events eludes this court, and it is not its role to supply one. Notably, neither the W-2 nor the existence of a citizenship inquiry dissuaded Bentall Green Oak from hiring him, and Boss offers no facts supporting his theory that either played any role in Edward Jones's hiring decision. "While no 'magic words'

are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition." *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006).

Boss's claim that Pillsbury's conduct violated the Eighth Amendment's prohibition on cruel and unusual punishments is likewise unsupported. Am. Compl. ¶ 6. "Although the Supreme Court has never definitively addressed the question of whether the Eighth Amendment generally, or the Cruel and Unusual Punishments Clause specifically, applies in civil cases, existing precedent has limited the amendment's application to criminal cases." *DOE v. Rogers*, 139 F. Supp. 3d 120, 169 (D.D.C. 2015); *see Browning–Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 259 (1989) ("[O]ur concerns in applying the Eighth Amendment have been with criminal process and with direct actions initiated by government to inflict punishment."). Pillsbury is not a government actor and Boss offers no "analogy to criminal punishments sufficient to warrant extending the scope of the Eighth Amendment to apply to this civil case." *Rogers*, 139 F. Supp. 3d at 170.

Finally, Boss argues that default summary judgment under Federal Rule of Civil Procedure 12(c) is appropriate because Pillsbury failed to file an answer within 21 days of being served. Mot. for Default Judgment at 1–2, ECF No. 29. Under Federal Rule of Civil Procedure 12(a), a defendant must serve a responsive pleading within 21 days of being served with the summons and complaint. But not only was Pillsbury improperly served, it filed a motion under Rule 12, rendering the responsive pleading due "14 days after notice of the court's action" on that motion. Fed. R. Civ. P. 12(a)(4)(A). Boss's Amended Complaint was docketed on April 30, 2025, and the Summons was reissued on the same day. ECF No. 24. Pillsbury filed its 12(b)(6) motion on May 21, 2025, within the requisite 21-day period, meaning its "time to respond to the remaining claims is governed by Rule 12(a)(4) and runs from the date of the [c]ourt's action on

this motion." *Doshi v. Blinken*, No. CV 23-3613 (RC), 2024 WL 3509486, at *10 (D.D.C. July 22, 2024). Consequently, Boss's claim for default judgment fails.

## IV.     CONCLUSION

Accordingly, the court will GRANT Pillsbury's Motion to Dismiss and DENY Boss's Motion for Default Judgment. A separate order will follow.

Date: October 27, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge